UNITED STATES of America, Appellee,

v.

Timothy Scott WESTERMAN, Appellant.

No. 91–2715.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 7, 1992.

Decided Sept. 8, 1992.

---

Wayne A. Gruber, N. Little Rock, Ark., argued, for appellant.

Michael Johnson, Little Rock, Ark., argued (Charles A. Banks, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, and McMILLIAN and HANSEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Timothy Scott Westerman appeals from his sentence entered in the United States District Court for the Eastern District of Arkansas upon his plea of guilty to one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371. For reversal of his sentence, appellant contends that the district court erred in (1) failing to give him a four-level reduction of his offense level under § 3B1.2 of the United States Sentencing Guidelines ("guidelines") for his role in the offense as a minimal participant, as stipulated in his plea agreement, and (2) failing to give him a three-level reduction under § 2X1.1(b)(2) of the guidelines for ending his role in the conspiracy before its completion. The government agrees with appellant. For the following reasons, we affirm in part and reverse in part and remand this case to the district court for resentencing.[1]

## BACKGROUND

In November 1989, Debra Noland reported to the Pulaski County sheriff's office and her insurance company, Farmers Insurance Group (FIG), that her home had been burglarized. Following a short investigation, FIG paid Noland $9,684 on December 7, 1989. At that time, she was behind in virtually all of her bills, including credit card bills, car payments, utilities, and house payments. In addition, her checking account was overdrawn.

Although the FIG payment helped Noland financially, she hired her brother, Marvin Tucker, to set her house on fire so she could collect on her fire insurance policy.

Marvin Tucker attempted to set fire to the house on December 17, 1989, and failed. Noland then offered $1000 to James Tucker, her cousin, to burn her house. James Tucker discussed the offer with Marvin Tucker and they agreed to burn down the Noland residence together. They attempted to set the house on fire on December 21, 1989, but again failed.

After the first two failures, Debra Noland arranged through Marvin Tucker for a third attempt by him and James Tucker. She upped the price to $1500 each. This time they decided to recruit a third person to drive the truck so that they both could enter the house and spread gasoline to fuel the fire. After James and Marvin Tucker had some disagreement over the price to pay the driver, they recruited appellant. He agreed to drive them for $150. Appellant was recruited on December 31, 1989, the same day Marvin and James Tucker made their third, and finally successful, attempt.

Appellant's task was to drive with the Tuckers to Noland's house, drop them off, and later pick them up at a designated time and place. Although appellant knew that the purpose of setting the house on fire was to allow the homeowner to collect insurance money, he did not know about the prior arson attempts, how much the Tuckers were being paid, how the insurance claim was to be made, how much the claim would be, or any other details of the overall scheme. Appellant was to be paid the $150 regardless of whether any insurance money was collected.

On the evening of December 31, 1989, Marvin and James Tucker and appellant went to the Noland residence. Prior arrangements had been made to ensure that no one would be at home. Marvin Tucker drove the truck. As they approached the house, Marvin and James Tucker got out of the truck and took several gallons of gasoline into the home. Appellant, as instructed, drove away. The Tuckers broke into

---

1. The motion of appellant to modify or correct appellate record has been considered by the court and is hereby granted.

the house through a rear window, entered, and spread gasoline throughout the house. They also opened the natural gas lines and poured a trail of gasoline down the driveway. They then left and were picked up by appellant at the designated location. Marvin Tucker again took over the driving. He drove back to the Noland house, opened the truck door, lit a book of matches, and ignited the trail of gasoline in the driveway. They immediately fled the scene believing their mission had been completed. The three men drove to Marvin Tucker's residence.

A short time later that evening, James Tucker became concerned that the fire had not ignited and returned to the house alone. Upon discovering that the house had not caught fire, he poured another trail of gasoline in the driveway and relit the fire. This time the house ignited and exploded. Appellant apparently did not know of James Tucker's return to reignite the fire.

After the fire, Debra Noland contacted FIG and reported the loss of her home. She gave statements to state and federal authorities and her insurance company about the circumstances of the fire. She asserted that certain people had burned her house in an act of retaliation. She filed a claim with the insurance company and ultimately sought more than $200,000 in losses.[2] However, she was able to collect only about $13,000.

Appellant was indicted for conspiracy to commit arson and mail fraud. Pursuant to a negotiated plea agreement, appellant pled guilty to conspiracy to commit mail fraud, a Class D felony. The plea agreement included a stipulation of facts between appellant and the United States. In negotiating the contents of the stipulation, the government took the position that all aspects of the overall conspiracy, including the dollar loss, the more than minimal planning, and the reckless risk of harm, could be considered in calculating appellant's total offense level. U.S.S.G. §§ 1B1.3, 2X1.1 (1990). The basis of the government's position was that the actions of all of the members of the conspiracy define relevant conduct so long as the particular member being sentenced could have foreseen the conduct. *Id.* § 1B1.3. Appellant conceded the government's position. Thus, the total offense level for appellant was determined based on the full extent of the intended insurance loss[3] and more than minimal planning, even though appellant did not actually participate in those activities or have any actual knowledge of them.[4]

The stipulation also summarizes appellant's involvement in the criminal conspiracy and the applicability of certain fact-dependent guideline provisions to appellant. Specifically, Paragraph 9 states that appellant's role in the offense was "minimal," thus entitling him to a four-level reduction under § 3B1.2; Paragraph 10 states that appellant's participation ended before completion of the conspiracy, thus entitling him to a three-level reduction under § 2X1.1(b)(2).

Following appellant's plea, the government provided the probation office with access to all of its information regarding appellant and his underlying criminal conduct to assist the probation office in preparing the pre-sentence report (PSR). The information provided included testimony from a ten-day criminal trial of Marvin Tucker, Debra Noland, and Diarl Noland (Debra Noland's husband)[5] and the stipula-

---

**2.** The insurance policy limit would have precluded Noland from recovering more than approximately $139,000. Accordingly, the calculated loss for guideline sentencing purposes was limited to $139,000.

**3.** The insurance loss was calculated on the basis of the amount of money Debra Noland claimed, not the amount she received, within the policy limits.

**4.** The calculation, without adjustments, was as follows:

| | |
|---|---|
| Base offense | 6 |
| Insurance loss (over $120,000) | +7 |
| More than minimal planning | +2 |
| Risk of harm | +2 |
| Total offense level | 17 |

**5.** Diarl Noland was granted a directed verdict at the close of the government's case-in-chief. Debra Noland and Marvin Tucker were convicted on all counts. James Tucker, who had earlier pled guilty, testified at the trial for the government. According to the government, because appellant's role in the criminal activity was very

tion that was part of appellant's plea agreement.

The probation office prepared a draft PSR which concluded that appellant was a "minor" rather than "minimal" participant, entitling him to a two-point rather than a four-point reduction under § 3B1.2. The PSR did not address whether appellant was entitled to a three-point reduction under § 2X1.1(b)(2) for withdrawing from the conspiracy prior to its completion. Both appellant and the government objected to the draft PSR on grounds that it misstated the facts and misapplied the guidelines.[6]

The final version of the PSR prepared by the probation office was substantively the same as the draft version. The probation office did, however, revise the PSR to specifically state that appellant should not receive a three-point reduction under § 2X1.1(b) because at the time his participation ended, he believed the offense had been completed.

At appellant's sentencing on July 20, 1991,[7] both appellant and the government again objected to the PSR on grounds that it misstated the facts and misapplied certain provisions of the guidelines. The district court nonetheless adopted the findings of the probation office as stated in the PSR and sentenced appellant accordingly. It is from this claimed incorrect application of the guidelines that appellant appeals. 18 U.S.C.A. § 3742(a)(2) (West Supp.1992).

## DISCUSSION

Appellant argues that the district court erred in applying § 3B1.2 and § 2X1.1(b)(2) of the guidelines to the facts of his case. Appellant argues that the district court erroneously considered the factual issues presented by these guideline provisions in the limited context of the arson, rather than the broader context of the mail fraud conspiracy to which he pled guilty. Appellant also argues that the district court considered improper factors in determining his role in the offense under § 3B1.2. As a result, appellant argues, the district court's ultimate conclusions that (1) he was a "minor" rather than "minimal" participant and (2) he believed the conspiracy was completed at the time his participation ended, were clearly erroneous. The government agrees with appellant.

■ First, we note that the sentencing court was not bound by the stipulation entered into by appellant and the United States and could with the aid of the PSR determine the facts relevant to sentencing. U.S.S.G. § 6B1.4(d) (1990).

### Role in the Offense

■ Section 3B1.2 of the guidelines establishes that a person's role in the offense, by comparison to other participants in the context of the overall relevant criminal conduct, may be small enough to warrant a mitigation of the sentence. The background section of § 3B1.2 states that such mitigation is available only if the defendant is substantially less culpable than the average participant. The district court's determination that appellant was entitled to a reduction of his offense level under § 3B1.2 is therefore tantamount to a finding that appellant was substantially less culpable than the average participant. *See United States v. West,* 942 F.2d 528, 531 (8th Cir.1991). We agree.

The issue then becomes what is the proper adjustment of appellant's sentence under § 3B1.2. Section 3B1.2(a) allows a four-level reduction of the offense level if the defendant was a "minimal" participant; § 3B1.2(b) allows a two-level reduction if

---

limited and was, for the most part, unrelated to the evidence that would be presented at trial, the government chose not to indict him with the Nolands and the Tuckers.

6. In addition, appellant's attorney and the United States attorney met with the probation officer assigned to the case to discuss these issues.

7. Appellant was sentenced by the same district court judge who presided at the trial of Marvin

he or she was a "minor" participant.[8] The guideline section does not define the terms "minor" and "minimal" and the application notes provide only a modicum of guidance.[9] Especially pertinent in the present case, however, is the introductory commentary which states: "The determination of a defendant's role in the offense is to be made on the basis of *all conduct within the scope of § 1B1.3 (Relevant Conduct), i.e.,* all conduct included under § 1B1.3(a)(1)–(4), and not solely on the basis of the elements and acts cited in the count of conviction." U.S.S.G. Ch. 3, Pt. B., intro. comment. (1990) (emphasis added.) In other words, for purposes of determining appellant's role in the offense under § 3B1.2, the district court was obligated to measure appellant's relative culpability in the context of the overall mail fraud conspiracy to which he pled, not just the arson conspiracy in which he took an active role. This interpretation is supported by *United States v. Goebel*, 898 F.2d 675 (8th Cir.1990), in which we quoted the following statement made by Judge Wilkins, then Chairperson of the Sentencing Commission:

> Whether Role in the Offense adjustments are warranted is to be determined not only by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable, *see* [U.S.S.G.] § 1B1.3, *but also by measuring each participant's individual acts and relative culpability against the elements of the offense of conviction.*

*Id.* at 677 (emphasis in original), *quoting United States v. Daughtrey*, 874 F.2d 213, 216 (4th Cir.1989). Judge Wilkins went on to note that this was an objective standard involving a defendant's degree of participation in the offense. *Id.*

We believe that the district court failed to consider appellant's role in the offense in the proper context. It appears that the district court erroneously considered appellant's role in the limited context of the arson conspiracy rather than the broader context of the mail fraud conspiracy.

■ In addition, the district court based its determination under § 3B1.2 on factors that simply do not define appellant's role in the offense. For example, the district court relied upon the PSR's observation that appellant was aware of the risk of injury and danger presented by committing arson in a residential neighborhood. Risk of injury is part of the relevant conduct analysis but does not directly define appellant's role either as a minimal participant or as a minor participant. Similarly, the district court relied upon the extent of the potential insurance loss ($139,000). The potential money loss is pertinent to relevant conduct but, again, does not define appellant's role in the offense. Appellant had no actual knowledge of the potential loss, nor was he to benefit in any way from such loss.

Thus, we hold that to the extent the district court measured appellant's role in the offense in the limited context of the arson conspiracy, as opposed to the broader context of the mail fraud conspiracy, and to the extent it considered either the risk of injury or the amount of potential dollar loss as factors indicating a greater, as opposed

---

Tucker and the Nolands.

**8.** A three-level reduction is warranted in cases falling between subsections (a) and (b). U.S.S.G. § 3B1.2 (1990).

**9.** U.S.S.G. § 3B1.2, comment. (n. 1–3) (1990):
1. Subsection (a) applies to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role of a minimal participant.
2. It is intended that the downward adjustment for a minimal participant will be used infrequently. It would be appropriate, for example, for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs.
3. For purposes of § 3B1.2(b), a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal.

to a lesser, role in the offense, the determination of appellant's role is based upon a misapplication of the guidelines as a matter of law.

■ The determination under § 3B1.2 of whether a defendant is a minor or a minimal participant in an offense may be reversed if clearly erroneous. *United States v. Ellis,* 890 F.2d 1040, 1041 (8th Cir.1989). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *United States v. Williams,* 890 F.2d 102, 104 (8th Cir.1989) (per curiam), *quoting United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *see also Anderson v. City of Bessemer City,* 470 U.S. 564, 573–76, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985).

■ Our review of the facts clearly indicates that appellant's role was minimal. He knew nothing of the insurance fraud scheme involving Debra Noland and the Tuckers other than that insurance fraud was the reason for the arson on December 31, 1989. He knew nothing of the unsuccessful prior arson attempts nor anything about the false burglary claim. Contrary to the findings in the PSR, the record clearly shows that appellant was not involved in any planning. The evidence shows that, after appellant was recruited, Marvin Tucker drove the truck to the scene, got out and told appellant to return to that spot once a certain amount of time had elapsed. Thus, we believe that Application Note 1 to § 3B1.2 precisely describes appellant's circumstances in this case. It states that minimal participants are those who "are plainly among the least culpable of those involved in the conduct of the group. Under this provision, the defendant's *lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others* is indicative of a role as a minimal participant." U.S.S.G. § 3B1.2, comment. (n. 1) (1990) (emphasis added).

In reviewing the entire record, we are left with a definite and firm conviction that the district court made a mistake in finding appellant a minor participant rather than a minimal participant in the underlying offense. We therefore hold that appellant is entitled to an additional two-point reduction of his offense level to account for the difference between the adjustments allowed under § 3B1.2(a) and § 3B1.2(b). We remand the case for resentencing in accordance with our holding.

*Completion of Conspiracy*

■ Finally, we take up the district court's determination that appellant is not entitled to a three-level reduction in his offense level under U.S.S.G. § 2X1.1(b)(2) (1990), which provides:

> If [the offense is] a conspiracy, decrease by 3 levels, unless the defendant or a coconspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.

The draft PSR completely ignored whether this guideline section was applicable in the present case. The revised PSR stated that appellant is not entitled to the three-level reduction because at the time he ended his participation in the conspiracy, he believed the participants had successfully completed the offense and he did not know of James Tucker's return to reignite the fire. The district court agreed with this recommendation and declined to give appellant the three-level reduction.

Appellant and the government argue that the district court erred in focusing on the arson rather than the mail fraud as the "offense" for purposes of applying § 2X1.1(b)(2). Application Note 2 specifically states: "the base offense level will be the same as that for the object offense which the defendant solicited, or conspired or attempted to commit." The offense that appellant was convicted of conspiring to commit was mail fraud. Therefore, the district court did err in treating arson rather than mail fraud as the object offense. At the time appellant's role in the conspiracy ended, it may have been true that he

believed the participants had completed all of the acts necessary for the successful completion of the *arson;* however, he certainly could not have believed that the *mail fraud* had been completed. In terms of the mail fraud, the fire was more the initiating event than the culminating event.

■ We hold, however, that appellant is not entitled to a three-level reduction under § 2X1.1(b)(2) because the record clearly demonstrates that "a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the offense." U.S.S.G. § 2X1.1(b)(2) (1990). Once Debra Noland sent in the claim for proceeds under her fire insurance policy, she had completed all the acts the conspirators believed necessary for successful completion of the mail fraud. Thus, the district court's error was harmless and no revision of this aspect of the sentence is required on remand. *See Williams v. United States,* — U.S. —, —— — ——, 112 S.Ct. 1112, 1120–21, 117 L.Ed.2d 341 (1992) (when district court misapplies the guidelines, a remand is required unless the reviewing court concludes, on the record as a whole, that the error was harmless); *see also United States v. Simmons,* 964 F.2d 763, 777 (8th Cir.1992).

For the foregoing reasons, the judgment of the district court is affirmed in part and reversed in part and the case is remanded for resentencing in accordance with this opinion.

HANSEN, Circuit Judge, concurring in part and dissenting in part.

The court's opinion overturns the district court's factual finding that appellant Westerman was a minor participant, makes the factual determination on appeal that he was a minimal participant under § 3B1.2, and remands for resentencing accordingly. The court affirms the district court's finding that Westerman is not entitled to a three-level reduction under § 2X1.1(b)(2). Because I believe that both of the district court's factual findings should be affirmed, I concur in part and respectfully dissent in part.

"[P]articipant status depends on culpability, which is a 'determination requiring sensitivity to a variety of factors.'" *United States v. Hall,* 949 F.2d 247, 249 (8th Cir. 1991) (quoting *United States v. Garvey,* 905 F.2d 1144, 1146 (8th Cir.1990)). The district court's determination of participant status "is a factual determination, not a legal conclusion." *Garvey,* 905 F.2d at 1146. Therefore, this court must affirm the district court's determination unless it was clearly erroneous. *Hall,* 949 F.2d at 249 (citation omitted). In determining participant status, the court may "consider the stipulation, together with the results of the presentence investigation, and any other relevant information." U.S.S.G. § 6B1.4(d) (policy statement) commentary. As the majority opinion points out, the district court was not bound by the parties' stipulation that Westerman was only a minimal participant. *See* U.S.S.G. § 6B1.4(d) (policy statement).

The district court is criticized for focusing on Westerman's participation in the arson conduct rather than on the overarching mail fraud conspiracy. In a conspiracy case, however, participants may have "distinct and independently significant roles that do not necessarily reflect substantially less culpability." *United States v. Wilson,* 955 F.2d 547, 551 (8th Cir.1992) (citing *United States v. Ellis,* 890 F.2d 1040, 1041 (8th Cir.1989)). Westerman knew the purpose of the arson was to collect insurance proceeds. In my view, his actions with respect to the arson may properly be considered a distinct and independently significant role in the overall mail fraud conspiracy. The fact that Westerman did not participate in other aspects of the charged conspiracy (in that he did not strike the match or sign the claim form) does not necessarily make him substantially less culpable. Because the arson was crucial to the success of the mail fraud conspiracy, I do not find that the district court improperly focused on Westerman's actions with respect to the arson.

The district court explained all the factors that it considered in making its factual determination that Westerman was a minor rather than a minimal participant.

First, Mr. Westerman served not only as a driver ... but as a lookout. Mr. Westerman knew the purpose of the arson, to collect insurance proceeds, and agreed to assist the Tuckers in intentionally committing the arson. Mr. Westerman and the Tuckers discussed the arson and decided upon a pre-determined location for dropping the Tuckers off prior to the attempted arson and picking up the Tuckers after the attempted arson. While it is true that he may not have shared in the insurance proceeds, he did reap some financial benefit, he received $150 for his involvement. Mr. Westerman was also aware of the fact that this structure or the operations were designed to explode a residence in a residential area and it was designed that the flames would engulf the residence.

*See* transcript of sentencing hearing at 22–23. In my view, the first two factors alone could constitute a valid basis for the court's determination that Westerman was a minor rather than minimal participant. As noted in the Guidelines, the downward adjustment for a minimal participant should be used infrequently. U.S.S.G. § 3B1.2 application note 2.

The court's opinion asserts that the district court's reliance on the risk of injury presented by the arson and the potential insurance loss was improper and became a "misapplication of the guidelines as a matter of law" because those factors do not directly define the appellant's role either as a minimal or minor participant. The opinion concedes, however, that the factors in question are pertinent to the relevant conduct analysis. Determination of participant status involves in part "comparing the acts of each participant in relation to the *relevant conduct* for which the participant is held accountable, *see* Guideline 1B1.3." *United States v. Goebel,* 898 F.2d 675, 677 (8th Cir.1990) (quoting *United States v. Daughtrey,* 874 F.2d 213, 216 (4th Cir. 1989)) (emphasis added); *see also* U.S.S.G. § 3B introductory commentary (The determination of a defendant's role in the offense is to be made on the basis of all the relevant conduct "and not solely on the basis of elements and acts cited in the count of conviction."). The scope of the offense itself must be examined as part of the role in the offense determination. Consideration of relevant conduct is necessary to determine Westerman's level of relative culpability in the mail fraud conspiracy, and "participant status depends on culpability." *See Hall,* 949 F.2d at 249 (quoting *Garvey,* 905 F.2d at 1146). I believe the district court properly included consideration of the defendant's relevant conduct in its decision-making process.

The court's opinion concludes that the district court's findings are clearly erroneous. Specifically, it states that:

> Contrary to the findings in the PSR, the record clearly shows that appellant was not involved in any planning. The evidence shows that, after the appellant was recruited, Marvin Tucker drove the truck to the scene, got out and told appellant to return to that spot once a certain amount of time had elapsed.

*Supra,* at 1428. A review of just James Tucker's testimony, however, portrays further knowledge on Westerman's part. After explaining how twenty gallons of gas were purchased and placed in five-gallon containers, James Tucker stated the following:

> A. I went back to his [Marvin Tucker's] trailer.
>
> Q. Who did you meet there?
>
> A. At that time nobody. There was just us.
>
> Q. Who is us?
>
> A. Me, Marvin, Tim Westerman. There was the three of us.
>
> Q. What did you do then?
>
> A. We prepared, got prepared for the job. I think Marvin got some channel locks, pliers, and what not out of the tool box. We put on our jumpsuits, found our gloves, changed boots and waited a little bit, and then we left.

*See* transcript in appellee's appendix, at 384. Furthermore, the court clearly stated that its findings were not made exclusively upon the information in the PSR, but were made "[a]fter carefully considering the stipulation, the pre-sentence report, argu-

ment of counsel, as well as the court's knowledge of the facts and circumstances involving this case, as well as other cases including the Nolands." *See* transcript of sentencing hearing at 21.

Because I do not agree that the district court's determination that Westerman was a minor rather than minimal participant was clearly erroneous, I respectfully dissent from that portion of the opinion.