# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 08-3422

———————

United States of America,

              Appellee,

      v.

Rahmaan Manzar El Herman,

              Appellant.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* Northern District of Iowa.
\*
\*
\*

———————

Submitted: May 13, 2009
Filed: October 8, 2009

———————

Before RILEY, SMITH, and COLLOTON, Circuit Judges.

———————

COLLOTON, Circuit Judge.

Rahmaan El Herman was charged with conspiracy to manufacture and distribute cocaine. At trial, a witness for the prosecution made a prejudicial statement about El Herman, but El Herman declined to move for a mistrial. After the jury returned a verdict of guilty, the district court[1] denied El Herman's motions for a judgment of acquittal and for a new trial, and sentenced him to 180 months' imprisonment. El Herman appeals the denial of both motions, and we affirm.

---

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

I.


In 2004, El Herman was charged with conspiring to manufacture and distribute fifty grams or more of cocaine base (commonly known as "crack cocaine"), and conspiring to distribute 500 grams or more of cocaine salt (commonly known as "powder cocaine"). At trial, the government's case consisted almost entirely of the testimony of six witnesses who described El Herman's activities in Sioux City, Iowa, between 2001 and 2003.


The government's first witness was Tony Smith, nicknamed "Fast Talkin' Tony." Smith testified that he began "cooking" powder cocaine into crack cocaine for El Herman in late 2001, but stopped in 2002 because El Herman "left town." Asked by the prosecutor when El Herman left, Smith replied, "I can't remember that. I know he got some trouble with kidnapping and a gun – . . . I can't remember."


Concerned about the prejudicial effect of Smith's reference to "kidnapping and a gun," defense counsel objected: "Your Honor, I apologize. I apologize, but based upon the outburst of this witness, I at the very least move to strike the testimony and ask you to admonish the jury or at the very most ask for a mistrial." The district court instructed the jury to "totally disregard" Smith's statement because it "has absolutely no basis in fact, has absolutely nothing to do with this trial, [and] has absolutely nothing to do with this defendant." The court took defense counsel's motion for a mistrial "under advisement," and the proceedings resumed. The government called two more witnesses after Smith, thereby concluding the presentation of evidence for that day.


After excusing the jury until the next morning, the court discussed the motion for a mistrial with the parties. The court expressed its view that Smith's statement cast El Herman "in about as poor a light as one could ever cast a defendant." The court then gave the parties "a heads-up," stating, "if I don't grant the motion for mistrial, let

-2-

the case go to the jury," and "the jury comes back with a guilty verdict, . . . I would probably set that aside." Alternatively, the court explained, "[i]f I grant a mistrial now or in the morning, we start anew, you know, in a couple of weeks or whenever the parties can be ready, and we just start fresh." After reminding defense counsel, "sometimes you need to be careful what you ask for," the court asked, "do you actually want a mistrial motion granted, or would you rather take your chances that I may set it aside?" The court gave defense counsel the evening to consider his answer.

The following morning, defense counsel told the court, "we'd like to continue and then reserve the right to raise [a motion for a mistrial] later." Defense counsel explained, "[W]e like our jury. We like the way the trial's going. We think that you gave a curative explanation yesterday." The court responded, "you're not asking me to do anything at this time, so I'm deferring judgment at this time." The court added, "I would be well within my discretion to grant a mistrial. I mean, this is an egregious situation in my view. . . . And, you know, essentially what I'm telling you is I would give you a mistrial if you want it now. There are no promises down the road." Defense counsel, however, insisted on hearing the remainder of the government's case before deciding whether to ask for a mistrial.

At the close of the government's evidence, the court deferred considering any motions until after the parties examined El Herman's first witness. Following that witness's testimony, the court excused the jury. Defense counsel moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, and the court reserved decision on the motion. The court and the parties then revisited the motion for a mistrial. Defense counsel reiterated to the court, "we want to proceed with this case with this jury with you," and asked the court to continue deferring judgment on the motion. The prosecutor observed, "it appears that the defendant is withdrawing his request for a mistrial but leaving open the possibility for making . . . some of those same arguments on a motion for new trial." That prompted the court to advise defense

counsel: "You may be able to raise [those arguments] in another format, but you can't really in my view continue your motion for a mistrial to a later time. It's either now or never on that issue." The court continued, "I don't think [withdrawing your motion for a mistrial] precludes you, for example, from arguing in post-trial motions" whether "the curative instruction was sufficient . . . to alleviate all potential prejudice."

Deciding not to call any more witnesses, the defense rested and renewed its motion for a judgment of acquittal. Reserving decision on the motion again, the court submitted the case to the jury. The jury found El Herman guilty of conspiring to manufacture and distribute fifty grams or more of crack cocaine and distribute 500 grams or more of powder cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.

Following the jury's verdict, the court denied El Herman's motion for a judgment of acquittal. El Herman moved for a new trial under Federal Rule of Criminal Procedure 33, relying in part on Smith's "highly prejudicial statement at trial." The court denied the motion, ruling that "El Herman intentionally relinquished and abandoned the right to argue Smith's testimonial outburst in a motion for new trial by not doing so in a motion for mistrial." The court acknowledged that it gave "indications at trial that the defendant *may* be able to assert Smith's testimonial outburst in post-trial motions." But the court maintained that it "never affirmatively informed the defendant that he would absolutely have a right to argue Smith's testimonial outburst in post-trial motions, and therefore did not lead him astray." In the view of the court, "the defendant's choice was his, regardless of what the court indicated." The court stated, however, that it would grant El Herman's motion for a new trial "if the court's holding on waiver is incorrect and overturned on appeal." The court sentenced El Herman to 180 months' imprisonment, and he appeals.

II.

El Herman argues that the district court erred in denying his motion for a judgment of acquittal. We review the denial of a motion for a judgment of acquittal *de novo*. *United States v. Cannon*, 475 F.3d 1013, 1020 (8th Cir. 2007). We will affirm if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The jury convicted El Herman of conspiring to manufacture and distribute fifty grams or more of crack cocaine and to distribute 500 grams or more of powder cocaine. The government had the burden to prove that there was an agreement to achieve these illegal purposes, that El Herman knew of the agreement, and that he knowingly participated in it. *See United States v. Thorpe*, 447 F.3d 565, 568 (8th Cir. 2006). We conclude that the evidence is sufficient to support El Herman's conviction.

At trial, the government presented testimony that El Herman cooperated with others to buy powder cocaine, cook it into crack cocaine, and sell the crack cocaine. Tony Smith testified that El Herman gave him money to buy three to five ounces of powder cocaine a week, and paid him to cook the powder cocaine into crack cocaine. Smith said that El Herman eventually began buying powder cocaine directly from suppliers, but that he continued to pay Smith to "cook his dope," sometimes giving him as much as 3.5 grams of crack cocaine for his services. Similarly, Porsha Clayborne testified that she bought powder cocaine for El Herman in quantities of one-half to two ounces, and observed El Herman and Smith cook it into crack cocaine. She also stated that she saw El Herman sell crack cocaine, and that she herself bought some from him.

Consistent with these accounts, one of El Herman's ex-girlfriends, Twyla Finley, testified that she saw El Herman obtain powder cocaine from suppliers and

cook it into crack cocaine. She further testified that she helped him sell about a thousand dollars' worth, or ten grams, of crack cocaine each weekday over the course of a year. Another of El Herman's ex-girlfriends, Ylana Asante, said that she occasionally accompanied El Herman to buy powder cocaine. She said that she saw him cook it with Smith's assistance, and that he then sold the resulting crack cocaine in pieces worth different amounts.

Two other witnesses described dealing cocaine with El Herman. Ronnie Turner testified that he bought powder cocaine from El Herman, and that he once drove with his cousin, Abdul Turner, to deliver crack cocaine to him. Abdul corroborated Ronnie's testimony, stating that he twice supplied El Herman with "distribution-type quantities" of crack cocaine.

A rational jury, viewing this evidence in the light most favorable to the government, could have found El Herman guilty of the charged conspiracy. El Herman notes that the government's evidence consisted almost entirely of the testimony of six cooperating witnesses, four of whom – Smith, Clayborne, Ronnie Turner, and Abdul Turner – testified pursuant to plea agreements with the government. The credibility of a witness, however, is for the jury to decide, and any issues regarding the credibility of the government's witnesses must be resolved in favor of the jury's verdict. *United States v. McCarthy*, 97 F.3d 1562, 1571 (8th Cir. 1996). Because the evidence is sufficient to support El Herman's conviction, the district court properly denied his motion for a judgment of acquittal.

III.

El Herman also appeals the district court's denial of his motion for a new trial. Federal Rule of Criminal Procedure 33 provides: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so

requires." We review the denial of a motion for a new trial for abuse of discretion. *United States v. Rice*, 449 F.3d 887, 893 (8th Cir. 2006).

El Herman argues that the district court erred by ruling on his motion for a new trial without considering the prejudicial effect of Smith's statement that "he got some trouble with kidnapping and a gun." El Herman concedes that he did not move for a mistrial based on the prejudicial effect of Smith's statement. But he contends that his failure to do so does not preclude him from relying on Smith's prejudicial statement in a motion for a new trial. We conclude that the district court did not abuse its discretion in denying the motion.

El Herman knew that the district court was prepared to grant a motion for mistrial after Smith's volunteered testimony, but he declined to seek one, preferring instead to see whether the jury would return an acquittal. He now contends that he was entitled to the best of both worlds: a chance for acquittal by the jury, and an order by the court for a new trial if the jury convicted. We disagree. "To refuse a mistrial and elect to take his chance with the jury, and then seek a second chance, is not a procedure that appeals except in the gravest instances." *Fleming v. United States*, 332 F.2d 23, 25 (1st Cir. 1964). El Herman took a calculated risk by proceeding to verdict despite Smith's testimony, and there is no compelling reason why he should be permitted to escape the consequences.

El Herman suggests that the district court misled him when it said it did not think his decision to continue with the trial precluded him from raising the prejudicial effect of Smith's statement in post-trial motions. The court made clear, however, that

there were "no promises down the road" as to whether El Herman would receive the relief he sought. El Herman thus made a knowing and intelligent decision to forgo a mistrial, and the district court did not abuse its discretion by holding him to it.

\*      \*      \*

The judgment of the district court is affirmed.

_____