# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 09-2005

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Gary Zierke, Jr., | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: March 9, 2010
Filed: August 24, 2010

———————

Before SMITH, BENTON, and SHEPHERD, Circuit Judges.

———————

SMITH, Circuit Judge.

A jury found Gary Zierke Jr. ("Zierke") guilty of conspiracy to distribute and possess with the intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846 ("Count 1"), and distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1) ("Count 2"). Zierke filed objections to the presentence investigation report (PSR) objecting, in part, to the quantity of drugs for which he was found responsible and the resulting base offense level, as well as a three-level increase for his role in the offense. The district court[1] denied Zierke's objections to the PSR and sentenced him to 360 months' imprisonment as to Count

———————

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

1 to run concurrent to three years of supervised release as to Count 2. On appeal, Zierke argues that the district court committed five errors: (1) admitting a recorded telephone conversation; (2) admitting statements Zierke made to law enforcement agents; (3) finding that there was sufficient evidence to establish that he was involved in a conspiracy to distribute methamphetamine; (4) finding that he was responsible for 574 grams of methamphetamine; and (5) imposing a three-level leadership enhancement. We disagree with each of Zierke's contentions and affirm the district court's judgment.

## I. *Background*

Zierke was charged in a two-count indictment with conspiracy to distribute and possess with the intent to distribute 50 grams or more of methamphetamine between October 1, 2007, and April 17, 2008, in violation of § 846, and distribution of methamphetamine on or about February 14, 2008, in violation of §§ 841(a)(1) and (b)(1). Pursuant to Federal Rule of Evidence 404(b), the government filed a notice of intent to introduce evidence at trial. Specifically, the government outlined its intent to introduce evidence related to law enforcement interviews with Zierke while he was incarcerated in the Nebraska Department of Corrections in 2006 and 2007. During those interviews, Zierke told investigators that he planned to sell drugs following his release from prison. The government thereafter filed a second notice of intent to introduce Rule 404(b) evidence. In this notice, the government stated its intent to introduce evidence regarding an October 31, 2008 phone call Zierke made to his son, Gary Zierke III ("Zierke III") while Zierke was incarcerated in the Douglas County Department of Corrections. During the phone call, Zierke intimated his desire to harm two witnesses who would testify against him.

Zierke's trial lasted four days and culminated with the jury finding Zierke guilty of Counts 1 and 2. The United States Probation and Pretrial Services office prepared a PSR. Zierke filed objections to the PSR, objecting, in part, to the quantity of drugs for which he was found responsible and the resulting base offense level, as well as

a three-level increase for his role in the offense. The district court denied Zierke's objections and sentenced him to 360 months' imprisonment as to Count 1 to run concurrent to three years of supervised release as to Count 2.

## II. *Discussion*
### A. *Admission of Recorded Phone Call*

On appeal, Zierke argues that the district court should have excluded a recorded telephone conversation where he intimated his desire that his son harm witnesses that he believed had turned against him. First, Zierke contends that the phone call encouraged the jurors to fear him and convict him because he is a danger to society or is simply a bad man. Second, Zierke contends that the phone call was not relevant to a material issue. Zierke maintains that his dislike of people talking or lying about him does not provide probative evidence of whether he had entered into an agreement with others to distribute methamphetamine. Third, Zierke notes that this call occurred after he had been in jail for more than seven months. Finally, Zierke contends that the prejudice from introducing the call substantially outweighed any probative value that the testimony may have provided about whether he was involved in a drug conspiracy and should have been excluded under Federal Rule of Evidence 403.

> In assessing a district court's evidentiary rulings, we review for an abuse of discretion. The trial court has broad discretion in determining the relevancy and admissibility of evidence. Under Rule 403, great deference is given to a district court's balancing of the relative value of a piece of evidence and its prejudicial effect.

*United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir. 2007) (internal quotations and citations omitted).

Zierke's argument is without merit. Rule 403 provides in pertinent part: "Although relevant, evidence may be excluded if its probative value is substantially

outweighed by the danger of unfair prejudice . . . ." "[E]vidence is not unfairly prejudicial merely because it tends to prove a defendant's guilt." *United States v. Boesen*, 541 F.3d 838, 849 (8th Cir. 2008). In turn, Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, [or] plan . . . ."

"We have ruled a number of times . . . that evidence of death threats against witnesses or other parties cooperating with the government is generally admissible against a criminal defendant to show consciousness of guilt of the crime charged." *United States v. DeAngelo*, 13 F.3d 1228, 1232 (8th Cir. 1994). "Moreover, we have noted that as direct evidence of the crime charged, the evidence of threats is not even Rule 404(b) evidence." *Id.* Finally, "[t]his court has been reluctant to hold that evidence was unfairly prejudicial when the district court gave an appropriate cautionary instruction." *United States v. Davis*, 154 F.3d 772, 780 (8th Cir. 1998). The district court gave a limiting instruction to the jury regarding the recordings of Zierke.[2] Zierke's comments to his son indicated a desire that the son eliminate witnesses against him. Such testimony is probative of his consciousness of guilt and

---

[2]The district court instructed the jury as follows:

Number one, you may only consider the statements of Gary Zierke, the defendant, on these recordings. You may only use the statements of the other people to understand the statements of the defendant, Gary Zierke.

Number two, as I've previously instructed you, transcripts are only aids and not evidence. It is up to you to determine what was said on the recordings.

Number three, to the extent the recordings reveal crimes or wrongs not charged in this case, you may only consider such evidence in determining whether Gary Zierke, the defendant, had the intent to enter into the alleged conspiracy charged in Count I.

also prejudicial. Like the district court, however, we do not consider its probative value to have been outweighed by unfair prejudice when, as here, the district court cautioned the jury with a limiting instruction. Accordingly, we hold that the district court did not abuse its discretion in admitting the phone recordings.

B. *Zierke's Statement to Police*

Second, Zierke contends that evidence of him attempting to gain a benefit from officers did not provide any insight as to any material issue. Zierke submits that this evidence should not have been presented to the jurors and that its prejudicial impact was immense. In an interview with Special Agent John Dougherty of the Federal Bureau of Investigation, Zierke expressed his willingness to sell methamphetamine to aid the government in its gang interdiction efforts. When the government balked at the proposed undercover buy, Zierke told them that he would proceed to sell the methamphetamine anyway.

We find that the district court properly admitted the statement under Rule 404(b). "[Rule 404(b)] evidence is admissible if it is (1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) proven by a preponderance of the evidence; and (4) if the potential prejudice does not substantially outweigh its probative value." *United States v. Oman*, 427 F.3d 1070, 1075 (8th Cir. 2005). First, because Zierke was expressing his intent to engage in a future methamphetamine deal, the statement was relevant to his intent to engage in methamphetamine transactions. Second, the testimony was similar in kind and close in time to the crime charged. Third, sufficient testimonial evidence was presented to support a finding that Zierke made the statements to law enforcement. Finally, in light of the other unobjectionable evidence, the potential unfair prejudice from admitting the statement did not substantially outweigh the statement's probative value.

C. *Sufficiency of the Evidence*

Third, Zierke contends that the record evidence was insufficient to establish that he was involved in a conspiracy to distribute methamphetamine.

"We review de novo the sufficiency of the evidence to sustain a conviction, examining the evidence in the light most favorable to the jury verdict and giving the verdict the benefit of all reasonable inferences." *United States v. Montano*, 506 F.3d 1128, 1132 (8th Cir. 2007). "We will reverse the jury verdict only if no reasonable jury could have found [Zierke] guilty." *Id.*

To support a conspiracy conviction, the government must show that (1) a conspiracy existed for an illegal purpose; (2) Zierke knew of the conspiracy; and (3) Zierke intentionally joined the conspiracy. *United States v. Becker*, 534 F.3d 952, 957 (8th Cir. 2008). In the instant case, at least five witnesses[3] testified to directly engaging in multiple methamphetamine transactions with Zierke. Furthermore, a government informant completed a controlled purchase with Zierke, which investigators observed. Finally, police officers executed a search warrant at Zierke's residence the day of the controlled purchase where they recovered several baggies,

---

[3]Investigator Bradley Hand of the Nebraska State Patrol testified about a controlled purchase of methamphetamine from Zierke on February 14, 2008. Investigator Richard Conrad of the Hall County Sheriff's Department testified about the warrant search of Zierke's home and evidence obtained. Investigator Mark Wiegart of the Grand Island Police Department's tactical response team also testified about the search, including methamphetamine found in Zierke's pocket. Timothy Vorhees testified about his controlled purchase of drugs from Zierke, as well as prior purchases. Lance Thomas testified that he purchased methamphetamine from Zierke several times. Sonia Martinez testified that she sold methamphetamine to Zierke for him to resell from December 2007 to January 2008. Machelle Sanchez testified that she supplied Zierke with methamphetamine. Kellie Svoboda testified about selling Zierke methamphetamine on a daily basis in the months of October and November of 2007. Zierke III testified that he saw Zierke sell methamphetamine daily in December 2007 and that he sold it for his father.

some of which were empty and others contained drug residue. They also recovered a glass pipe and a torch—used to smoke methamphetamine—among other items. Based on this evidence and testimony, we find that sufficient evidence exists to establish beyond a reasonable doubt that Zierke participated in a conspiracy to distribute methamphetamine.

### D. *Drug Quantity Determination*

Fourth, Zierke contends that the drug quantity used in his sentencing was overstated. Specifically, he argues that the district court's calculation included the methamphetamine that he was buying from one government witness and then selling to another. Zierke urges that to include both weights would be double counting. Therefore, Zierke argues that district court should have excluded the 140 grams the government witness bought from him. Zierke submits that once this 140 grams is subtracted, the total weight is below 500 grams.

"We review the district court's factual finding of drug quantity for clear error and will reverse a determination of drug quantity only if the entire record definitely and firmly convinces us that a mistake has been made." *United States v. Minnis*, 489 F.3d 325, 329 (8th Cir. 2007) (internal quotations and citation omitted).

Zierke's drug quantity arguments are also unavailing. "The Guidelines permit a district court to approximate the quantity of drugs for sentencing purposes where . . . there has been no direct seizure of drugs directly establishing the relevant amount." *United States v. Frazier*, 280 F.3d 835, 851 (8th Cir. 2002). "Moreover, the court can determine drug quantity using imprecise evidence, so long as the record reflects a basis for the court's decision." *United States v. Zimmer*, 299 F.3d 710, 720 (8th Cir. 2002) (internal quotations and citation omitted). In this case, the district court determined that there was sufficient evidence to support its finding that "the *bare minimum* amount of drugs involved here was 574 grams." (Emphasis added.) Furthermore, the court added, "I do acknowledge that you have to be careful of

double counting." Reviewing the record testimony, it is readily evident that adding the frequency and quantity of drugs that Zierke trafficked shows that his drug quantity easily exceed the charged 500 grams.[4] Zierke has not shown that the district

_____

[4]Vorhees testified that the night prior to the controlled purchase Vorhees received approximately a half gram to three quarters of a gram of methamphetamine from Zierke on a front. Vorhees also testified that he first began purchasing methamphetamine from Zierke around December 2007. Vorhees further stated that he bought "8-balls"—3.5 grams—of methamphetamine from Zierke on two occasions; one purchase occurred during the controlled buy. Vorhees also testified that he once bought a "teener"—1.75 grams—from Zierke.

Thomas testified that he began purchasing methamphetamine from Zierke around Christmas of 2007. Thomas purchased approximately 3.5 grams of methamphetamine from Zierke on several occasions, but not more than six times.

Martinez testified that she sold 8-balls of methamphetamine to Zierke daily for one and a half to two weeks beginning in early November 2007. Martinez further testified that on four or five occasions, she sold Zierke two 8-balls—7 grams—in a day. Martinez also explained that on six or seven occasions from December 2007 to January 3, 2008, she sold Zierke half-ounce amounts of methamphetamine. Martinez also testified that from December 2007 to January 2, 2008, she sold 8-balls to Zierke. Finally, Martinez said that on seven or eight occasions from December 2007 to January 3, 2008, Martinez bought half ounces of methamphetamine from Zierke but that once or twice it was an 8-ball short.

Sanchez testified that she sold methamphetamine to Zierke from approximately the end of November 2007 until approximately three weeks prior to her arrest on February 14, 2008. For the first two to three weeks, Sanchez was selling Zierke two 8-balls at varying rates—from more than once per day to once every few days. Sanchez further testified that starting in December 2008, she sold Zierke half ounces of methamphetamine at varying frequencies—from daily to every few days. Sanchez also testified that she sold him one ounce of methamphetamine on a rare occasion. Sanchez finally stated that she sold Zierke an 8-ball on February 14, 2008.

(continued...)

court's drug quantity determination was clearly erroneous.

### E. *Section 3B1.1 Leadership Enhancement*

Finally, Zierke contends that while Zierke III's testimony, if believed, may establish that he supplied his son with methamphetamine, he did not direct, organize, or supervise his endeavors.

"The district court's factual findings, including its determination of a defendant's role in the offense, are reviewed for clear error. Its application of the guidelines to the facts is reviewed de novo." *United States v. Vasquez-Rubio*, 296 F.3d 726, 729 (8th Cir. 2002) (internal citations omitted).

Again, Zierke's arguments are unpersuasive. Section 3B1.1(b) of the Guidelines provides that "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels." Comment 2 to that section further provides that "[t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants."

---

[4](...continued)

Svoboda testified that starting in mid-October to November 27, 2008, she sold Zierke 8-balls of methamphetamine daily. Svoboda further testified that Zierke would often return a second time in the same day. Svoboda also testified that she sold Zierke half-ounce amounts of methamphetamine on two or three occasions. Finally, Svoboda said that starting in mid-January, she sold Zierke an 8-ball a couple of times and gram quantities on other occasions.

Zierke III testified that he saw Zierke selling methamphetamine every day after he began living with his father. Zierke III also stated that at least as early December 2007, he was selling methamphetamine for Zierke every day. Zierke alone supplied Zierke III with methamphetamine. Zierke III said that he would sell about an 8-ball or two per day for Zierke. Zierke III and Zierke also used methamphetamine together.

U.S.S.G. § 3B1.1 cmt. 2. In this case, the record contains substantial evidence establishing that Zierke directed Zierke III. First, the record reflects that Zierke exclusively supplied his son with methamphetamine for subsequent sales. Second, the record indicates that Zierke controlled the proceeds of Zierke III's drug transactions. Finally, the phone call between Zierke and Zierke III, as well as Zierke III's testimony, supports a finding that Zierke controlled, directed, and even intimidated Zierke III in performance of acts in furtherance of their criminal activity.

### III. *Conclusion*

We affirm the judgment of the district court.

_____