# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3889

_____

United States of America

*Plaintiff - Appellee*

v.

Randy Scott Skarda

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: November 14, 2016
Filed: December 22, 2016

_____

Before COLLOTON, BEAM, and GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge.

Randy Scott Skarda appeals his convictions for distribution of methamphetamine, conspiracy to distribute methamphetamine, distribution of cocaine, and possession of a firearm by a drug user, arguing that the district court[1]

_____

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

erred in denying his motion to suppress and his motion for a new trial. For the reasons discussed below, we affirm.

## I.      BACKGROUND

Lynn Starr was arrested at her home in Ryder, North Dakota, on October 7, 2013, for drug trafficking offenses. During a search of her home, police found marijuana, methamphetamine, scales, plastic bags, and a cell phone. FBI Special Agent Coulter interviewed Starr and reviewed the list of contacts in her cell phone. Starr identified Skarda, who was listed in her cell phone, as one of her long-time methamphetamine suppliers. She was unable to provide Skarda's address but gave a description of the property. She described Skarda's residence as a farmstead or homestead with multiple buildings, a large, metal quonset-type building next to the residence, and equipment on the property. The residence was a one bedroom metal structure with water and electricity. She also noted that the home was undergoing construction. Specifically, Skarda had poured a foundation, built walls, and was beginning to insulate the walls and complete woodwork. Starr acknowledged that the property was possibly Skarda's parents' homestead.

Based on Starr's testimony, Coulter applied for a search warrant for property in Keene, North Dakota, associated with Skarda. The warrant application listed the premises as "10952 32nd Street Northwest, Keene, North Dakota" (the 10952 address). The physical address came from North Dakota Department of Transportation records, which listed the 10952 address as Skarda's residence. The affidavit accompanying the application also contained testimony from a confidential source (CS-5), who stated that he or she purchased methamphetamine from both Skarda and Starr. CS-5 purchased methamphetamine from Skarda at Skarda's home, where he kept the methamphetamine in a quonset on his property. Magistrate Judge Klein signed the search warrant for the 10952 address at 4:15 p.m. on October 7, 2013.

Before executing the warrant, police officers gathered to brief the operation. McKenzie County Deputy Sheriff Johansen, who lived near Skarda's residence and knew the area, noticed that the address on the search warrant was not Skarda's residence and notified Coulter. Johansen then contacted the McKenzie County dispatch and retrieved the correct address for Skarda, which was 10841 28th Street Northwest, Keene, North Dakota (the 10841 address). Johansen and FBI Special Agent Bennett then went to the 10841 address to ensure the property matched Starr's description. Bennett identified a metal structure, equipment on the property, and a residence under construction. Bureau of Indian Affairs Special Agent White viewed the 10841 address on Google Earth, noting a residence under construction and a quonset, which also confirmed that Starr's testimony was describing the 10841 address. Following this verification, at 6:02 p.m. on October 7, 2013, Coulter called the law clerk for another magistrate judge who was able to connect him to Magistrate Judge Klein at approximately 6:16 p.m. After Magistrate Judge Klein placed Coulter under oath, Coulter explained that the address on the search warrant was incorrect and told her that the correct address was 10841 28th Street Northwest. He explained that the 10952 address came from public records that he mistakenly believed to be correct when he submitted the warrant application. However, local police officers familiar with Keene noticed the mistake. Magistrate Judge Klein instructed Coulter to write in the correct address and initial the changes.

Police officers executed the search warrant at the 10841 address at 6:58 p.m. on October 7, 2013. They found drugs, drug-related items, cash, and firearms. In the quonset they found a firearm, ammunition, 138 grams of marijuana, small amounts of cocaine and methamphetamine, a glass smoking device, hypodermic needles and syringes, and plastic bags. In the house they found numerous firearms, $85,000 in cash, and a red bag containing methamphetamine and a glass smoking device that belonged to Skarda's girlfriend, Tana Boots. While the search was ongoing, Skarda and Boots arrived at the residence. Shots were fired, and Skarda was injured. Law

-3-

enforcement then searched Skarda's vehicle and found a firearm, approximately $21,000 in cash, and Boots' cellular phone. A copy of the search warrant with Coulter's handwritten and initialed changes was left at the residence.

On October 10, 2013, Magistrate Judge Klein issued a supplemental search warrant reciting the events that occurred on October 7 regarding the incorrect address and handwritten changes on the search warrant. However, she inadvertently stated that the change request was made on October 8. On October 25, 2013, the government filed a Rule 36 motion to correct the supplemental search warrant so that it correctly noted the date Coulter requested the change. Magistrate Judge Klein granted the motion. On March 27, 2014, Skarda was charged with distribution of methamphetamine, conspiracy to distribute methamphetamine, distribution of cocaine, possession of a short-barreled rifle, and possession of a firearm by a drug user. Prior to trial, Skarda filed a motion to suppress, arguing that the search of his property on October 7, 2013, was illegal because the warrant was not supported by probable cause. Skarda also objected to Magistrate Judge Klein's failure to record the telephone conversation with Coulter, arguing that it violated Rules 41 and 4.1 of the Federal Rules of Criminal Procedure. The district court denied the motion holding that "the premises to be searched were described with sufficient particularity and adequate probable cause existed to support the issuance of the search warrant." The district court further held that although Magistrate Judge Klein violated Rule 41, suppression was not the appropriate remedy. Finally, the district court held that "even if probable cause did not exist to issue the warrant in this case, the 'good faith exception' to the exclusionary rule . . . would save the evidence seized from being suppressed."

At trial, Starr testified that she had been purchasing methamphetamine weekly from Skarda for nine to ten months prior to her arrest. Several purchases occurred at Skarda's home, and the three ounces of methamphetamine found when she was arrested in October 2013 came from Skarda. Shelly Suelzle, who was arrested in

October 2013 for possession of methamphetamine, cocaine, and marijuana, testified that she obtained methamphetamine and cocaine from Skarda at her home in North Dakota. Frank Black testified that he purchased methamphetamine from Skarda at Skarda's residence from 2012 to 2014. He also stated that a week before trial, while gambling at a casino in North Dakota, Skarda sat down next to him, cursed at him, and told him that he should have kept his "F'ing mouth shut." As Black was leaving the casino, Skarda remarked, "You better go home." The district court allowed Black's testimony regarding the casino encounter as evidence of conscious guilt, despite Skarda's objection. Starr's sons, Anthony and Blue Sky Starr, also participated in the distribution of methamphetamine. Blue Sky went with Starr to meet Skarda at Skarda's residence on at least two occasions. Thus, Blue Sky was able to identify Skarda's residence from photographs admitted at trial.

The jury found Skarda guilty of all counts except possession of a short-barreled rifle. Skarda then filed a motion for judgment of acquittal or new trial on the basis that the district court erred by admitting Black's testimony about the casino encounter. The motion was denied, and Skarda was sentenced to 120 months for each count, with the sentences running concurrently. Skarda now appeals, arguing that the district court erred in denying his motion to suppress because (1) changing the address on the search warrant violated Rule 41 and Rule 4.1 of the Federal Rules of Criminal Procedure; (2) the warrant was not based on any particularized probable cause; and (3) the good faith exception did not save the illegal search. Skarda also argues that the district court erred in denying his motion for a new trial because allowing Black's testimony was an abuse of discretion.

## II.    DISCUSSION

### A.    Motion to Suppress

"When reviewing a district court's denial of a suppression motion, we review for clear error the district court's factual findings and review de novo whether the

Fourth Amendment was violated." United States v. Welch, 811 F.3d 275, 279 (8th Cir.) (quoting United States v. Bell, 480 F.3d 860, 863 (8th Cir. 2007)), cert. denied, 136 S. Ct. 2476 (2016).

### 1. Rule 41 and Rule 4.1 of the Federal Rules of Criminal Procedure

Skarda argues that changing the address on the search warrant violated Rule 41 and Rule 4.1 of the Federal Rules of Criminal Procedure and further invalidated the search warrant. Rule 41(d)(3) states, "In accordance with Rule 4.1, a magistrate judge may issue a warrant based on information communicated by telephone or other reliable electronic means." Rule 4.1(b) lists the procedures for issuing a warrant by telephone or other electronic means. "The judge must place under oath–and may examine–the applicant and any person on whose testimony the application is based." Fed. R. Crim. P. 4.1(b)(1). Where the applicant only verifies information contained in an affidavit, the judge need only "acknowledge the attestation in writing on the affidavit." Id. 4.1(b)(2)(A). However, where the judge allows additional testimony or exhibits, he or she must:

> (i) have the testimony recorded verbatim by an electronic recording device, by a court reporter, or in writing; (ii) have any recording or reporter's notes transcribed, have the transcription certified as accurate, and file it; (iii) sign any other written record, certify its accuracy, and file it; and (iv) make sure that the exhibits are filed.

Id. 4.1(b)(2)(B).

Because the phone conversation between Coulter and Magistrate Judge Klein was not recorded, it violated Rule 4.1. However, as the district court correctly held, suppressing the evidence was not the correct remedy. A violation of Rule 41 warrants exclusion only when (1) the violation is of constitutional magnitude; (2) the

defendant is prejudiced in that the search would not have taken place or would not have been as intrusive; or (3) there is evidence of an intentional and deliberate or reckless disregard for the rule. United States v. Freeman, 897 F.2d 346, 350 (8th Cir. 1990).

First, the violation was not one of constitutional magnitude. "The Warrant Clause of the Fourth Amendment requires that warrants (1) be issued by a neutral and detached magistrate, (2) contain a 'particular[] descri[ption of] the place to be searched, and the persons or things to be seized,' and (3) be based 'upon probable cause, supported by Oath or affirmation.'" United States v. Clyburn, 24 F.3d 613, 617 (4th Cir. 1994) (quoting U.S. Const. amend. IV). There is no requirement that oral testimony in support of the warrant be recorded. Id. Similarly, "the Fourth Amendment does not require the issuing judge to record sworn supplementary oral testimony." United States v. Cote, 569 F.3d 391, 392-93 (8th Cir. 2009). Magistrate Judge Klein, a neutral magistrate, placed Coulter under oath before he provided information about the incorrect address on the search warrant. The constitutional requirements for the search warrant were met, and thus, there was no violation of constitutional magnitude.

Second, Skarda was not prejudiced by the violation. Skarda claims that he was prejudiced because due to the lack of recording, there is no opportunity for meaningful review. However, there was meaningful review at the suppression hearing, and the entire record gives ample information for review by this court. Moreover, evidence will not be suppressed for a violation of Rule 41 unless the search would not have taken place or would have been less intrusive had the rule been followed. Freeman, 897 F.2d at 350. Here, there is no evidence that the search would not have occurred or would have been conducted differently had the phone call been recorded.

Third, there is no evidence of an intentional and deliberate or reckless disregard for the rule. As the district court noted, "recording the conversation would have been very difficult under the circumstances." The phone call occurred after normal court hours, and both parties were using cell phones. Thus, the failure to record the conversation appears to have been inadvertent, not intentional. Additionally, "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." United States v. Leon, 468 U.S. 897, 916 (1984). According to Rule 4.1, any oversight in recording the telephone conversation is attributed to Magistrate Judge Klein, not Coulter. It was her duty to record the conversation. Fed. R. Crim. P. 4.1. Thus, "on the facts of this case, exclusion is an inapt remedy." United States v. Chaar, 137 F.3d 359, 362 (6th Cir. 1998). As such, even though the telephone call between Coulter and Magistrate Judge Klein and the resulting change in address on the search warrant violated Rule 41 and Rule 4.1, the violation does not warrant suppression of the evidence.

## 2. Probable Cause

Skarda also argues that the search warrant was invalid and the search illegal because the warrant was not based on particularized probable cause. According to Skarda, even after the warrant was corrected following the telephone call to Magistrate Judge Klein, there was only probable cause to search the property at the 10952 address, not the 10841 address. We review the probable cause determination de novo. United States v. Gonzalez, 781 F.3d 422, 427 (8th Cir.), cert. denied, 136 S. Ct. 139 (2015). However, we grant "great deference" to the initial determination that there was probable cause for the search. United States v. Smith, 581 F.3d 692, 694 (8th Cir. 2009). We will affirm the district court's denial of a motion to suppress "unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." United States v. Puckett, 466 F.3d

626, 629 (8th Cir. 2006) (quoting United States v. Vanhorn, 296 F.3d 713, 717 (8th Cir. 2002)).

A magistrate judge may issue a search warrant "upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place." Steagald v. United States, 451 U.S. 204, 213 (1981). A showing of probable cause requires "evidence of a nexus between the contraband and the place to be searched." United States v. Tellez, 217 F.3d 547, 550 (8th Cir. 2000). The court must make a "common-sense decision" based on the totality of the circumstances set forth in the affidavit as to whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).

Here, law enforcement found methamphetamine on Starr that she purchased from Skarda. Starr also had Skarda's phone number in her cell phone. CS-5 corroborated Starr's testimony about Skarda's drug dealing and stated that he or she had also purchased methamphetamine from Skarda. Starr gave a physical description of Skarda's residence, noting that it might possibly be Skarda's parents' homestead but emphasizing that Skarda lived there. She stated that the residence was a one-bedroom metal structure with water and electricity running to it that was currently under construction. She also noted that there was a large quonset metal structure next to the home, as well as equipment on the property. CS-5 substantiated Starr's physical description of Skarda's residence, noting that Skarda kept methamphetamine in the quonset on his farm property. The original address on the warrant was incorrect because the Department of Transportation records for Skarda were incorrect. The mistake was realized prior to the execution of the warrant, Johansen obtained the correct address from dispatch, the new address was verified, and the warrant was corrected. Thus, the affidavit established a clear nexus between drug dealing and Skarda's residence, such that the mere address change had no effect on the validity of the warrant.

Skarda further argues that the change in address interfered with the sufficiency of the description of the place to be searched.

> The test for determining the sufficiency of the description of the place to be searched is whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.

United States v. Gitcho, 601 F.2d 369, 371 (8th Cir. 1979). As discussed above, the physical description provided by Starr and CS-5 sufficiently described the 10841 address so that officers could locate Skarda's residence. After learning of the incorrect address, Johansen and Bennett visited the property and were able to confirm that the 10841 address was the correct address based on the descriptions given by Starr and CS-5. White was also able to identify the 10841 address via Google Earth and confirm that it matched the description previously provided. Thus, the first prong of the test is met. Skarda next argues that Starr's description is insufficient because it would fit 99.99% of all rural farmsteads in North Dakota and thus fails the second prong of the test. This argument disregards Starr's testimony that Skarda's residence was under construction. Specifically, she testified that a foundation had been poured, new walls had been constructed, and insulation and woodwork were beginning. This distinguishes Skarda's residence from most other rural farmsteads in North Dakota. The second prong is met. Thus, the description was sufficient, and the district court properly determined that probable cause existed to search the property located at the 10841 address.[2]

---

[2]Although the good faith exception to the exclusionary rule would likely save the evidence from being suppressed, because we hold that adequate probable cause existed and the search warrant sufficiently described the property to be searched, we need not address this argument.

-10-

**B.     Motion for a New Trial**

Skarda's motion for a new trial was based on the district court's decision to allow evidence that Skarda sought to and did intimidate witness Black as seemingly evidenced by Black's early exit from the casino.  At trial, Black testified that a week before trial Skarda approached him at a casino, cursed at him, and made threatening statements.  The district court held that Skarda's encounter with Black at the casino was "indicative of some consciousness of guilt."  The district court then conducted an analysis under Rule 403 of the Federal Rules of Evidence and held that the probative value of the evidence was not outweighed by unfair prejudice.  Skarda argues that this was in error.

We review the district court's admission of evidence of witness intimidation for an abuse of discretion.  United States v. Zierke, 618 F.3d 755, 759 (8th Cir. 2010).  It is well established in the Eighth Circuit that threats against witnesses are "generally admissible against a criminal defendant to show consciousness of guilt of the crime charged."  Id. (quoting United States v. DeAngelo, 13 F.3d 1228, 1232 (8th Cir. 1994)).  Moreover, the evidence "is considered 'direct evidence of the crime charged' and is not subject to a Rule 404(b) analysis."  United States v. Castleman, 795 F.3d 904, 915 (8th Cir. 2015) (quoting Zierke, 618 F.3d at 759), cert. denied, 136 S. Ct. 912 (2016).

Skarda relied on United States v. Weir, 575 F.2d 668 (8th Cir. 1978), where the district court erred by allowing evidence that the defendant attempted to kill an informant and threatened to kill a witness and FBI agent.  Id. at 669.  The testimony was admitted at trial to explain how the witness identified the defendant.  Id. at 670.  This court reversed, holding that identification testimony "could have been offered into evidence, by appropriate questions, without going into the objectionable 'other crimes' [or attempted murder] evidence."  Id. at 671.  The court reversed the conviction, held that the evidence "was substantially outweighed by the danger of

unfair prejudice," and noted "that it should have been excluded under Fed. R. Evid. 403." Id. at 670. Weir, however, is easily distinguished. In Weir the district court admitted the disputed testimony as evidence of "other crimes" to show the identity of the defendant under Rule 404(b). Here, the testimony was admitted as evidence of Skarda's consciousness of his own guilt.

Moreover, since Weir, this court has consistently held that evidence of threats against witnesses are generally admissible, even if prejudicial. See Castleman, 795 F.3d at 915; Zierke, 618 F.3d at 759; DeAngelo, 13 F.3d at 1232. Rule 403 of the Federal Rules of Evidence only excludes evidence that is "unfair[ly] prejudic[ial]." "[E]vidence is not unfairly prejudicial merely because it tends to prove a defendant's guilt." Zierke, 618 F.3d at 759 (quoting United States v. Boesen, 541 F.3d 838, 849 (8th Cir. 2008)). Contrary to Skarda's argument, the government did not argue or imply that the jury should convict Skarda because of his bad character. Rather, Black's testimony was used to show Skarda was guilty of the charged crime. Additionally, the testimony was not excessively emotional or inflammatory. Thus, the district court did not abuse its discretion by admitting the testimony.

## III. CONCLUSION

The judgment of the district court is affirmed.

_____