# United States Court of Appeals

## For the Eighth Circuit

_____

No. 19-1793

_____

Carlden Trotter

*Plaintiff - Appellant*

v.

Walter Lawson, Correctional Officer I, ERDCC; Stephen McGee, Correctional Officer I, ERDCC

*Defendant*s

David L. Shipley, Correctional Officer II, ERDCC; Bobby Currington, Correctional Officer I, ERDCC; Robert Thebeau, Correctional Officer I, ERDCC

*Defendants - Appellees*

Steve Larkins; Scott McFarland, Correctional Officer II, ERDCC; William Thomas

*Defendant*s

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 13, 2021
Filed: May 18, 2021

_____

Before GRUENDER, BENTON, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

Carlden Trotter assaulted a prison guard and then a group of guards allegedly assaulted him. Trotter sued for violations of his civil rights, *see* 42 U.S.C. § 1983, but a jury found in favor of the guards. We now affirm, notwithstanding challenges to three of the district court's[1] pretrial rulings.

I.

While working in the prison kitchen, Trotter attacked a guard. Once he was placed in handcuffs, four guards took him to the medical unit and then to administrative segregation. Trotter alleges that, along the way, they punched, kicked, and stomped on him; threw him into a snowbank; and rammed him into various objects. In his lawsuit, Trotter claimed that the guards used excessive force and denied adequate medical care for his injuries.

Three of the four guards, including David Shipley, testified at trial. They explained that, while moving Trotter, they accidentally tripped and fell in the snow, but that no one struck him. Trotter, for his part, testified consistently with the allegations in his complaint, but the medical staff who treated him, aside from generally discussing his injuries, could not shed much light on what happened.

In this he-said/they-said case, Trotter tried to offer other evidence too. One item was a letter sent to Shipley by the Missouri Department of Corrections notifying him that he had been terminated for using excessive force in a later, unrelated incident. Another was a report showing that a supervisor investigating the alleged assault against Trotter never requested security-camera footage. In an effort to get the report admitted, Trotter wanted to call the supervisor as a witness.

---

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

During a pretrial hearing, the district court decided that neither item was admissible, in part because both would be more prejudicial than probative. *See* Fed. R. Evid. 403. At the same hearing, it also rejected Trotter's request for an instruction that would have required the jury to assume that the accusations against the one guard who refused to appear or otherwise participate in the trial, Scott McFarland, were "true."

## II.

On appeal, Trotter argues that the evidence he offered was relevant, admissible, and highly probative. He takes aim, in particular, at the district court's decision to exclude it under Federal Rule of Evidence 403, which allows evidence to be kept out "if its probative value is substantially outweighed by a danger of," among other things, "unfair prejudice, confusing the issues," or "wasting time." He faces an uphill battle in overturning this decision: we owe "great deference" to the "court's balancing of the relative value" and "prejudicial effect" of evidence and will only reverse for an "abuse of discretion." *United States v. Zierke*, 618 F.3d 755, 759 (8th Cir. 2010) (quotation marks omitted).

## A.

We begin with the letter, which discusses an incident that occurred more than two years *after* what happened here. It informs Shipley of his "dismissal" for using a "closed fist" to strike an inmate who had "bec[o]me assaultive toward [prison staff]." Of particular significance to the district court's ruling, it also mentions a "threatening statement" he made about his estranged wife.

After hearing from both sides, the district court decided that the letter was "way too prejudicial" to admit. *See Walker v. Kane*, 885 F.3d 535, 540 (8th Cir. 2018) ("'Unfair prejudice' (under Rule 403) means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional

-3-

one." (quotation marks omitted)).  Among other things, it potentially invited the jury to punish Shipley for his other bad acts, including the threat against his estranged wife, which had no connection to the alleged assault on Trotter.  *See* Fed. R. Evid. 403.  Even the more relevant portions,[2] like the discussion of Shipley's later use of excessive force, risked having the jury jump to the conclusion that if he struck one inmate, he must have struck Trotter too.  *See* Fed. R. Evid. 404(b)(1) (prohibiting the use of other-bad-acts evidence to create inferences like this one).

The potential prejudice was not just limited to Shipley.  There was a distinct possibility, given that other guards were also on trial, that the jury would hold Shipley's bad acts against them too.  So even if we were to assume, as Trotter argues, that the letter was relevant and otherwise admissible either as other-bad-acts evidence, *see* Fed. R. Evid. 404(b)(2), or as impeachment evidence, *see* Fed. R. Evid. 608(b), it was not an abuse of discretion for the district court to exclude it anyway under Rule 403.  Nor was it an abuse of discretion to prohibit Trotter from cross-examining Shipley on the circumstances surrounding his termination.  *See* Fed. R. Evid. 403.

B.

We reach the same conclusion about the report.  The risk was that it would create a sideshow at trial, "confus[e] the issues," and "wast[e] time" by drawing attention away from the alleged use of excessive force by the four guards.  *Id.* Indeed, the supervisor who conducted the investigation was not even a defendant in the case, and Trotter's claims were about the alleged assault itself and the adequacy of the medical treatment he received afterward, not the subsequent investigation.

There was not much probative value, either.  As the district court put it, the investigation was a "red herring."  Trotter hoped that the jury would see a coverup:

---

[2]Trotter made no offer to redact the letter or excerpt the relevant portions.

a supervisor trying to protect the guards who worked for him by closing his eyes to anything that could lead to a finding of misconduct. But as the district court pointed out, no one had even "seen th[e] video" to "know[] what's in it," so there was no telling what it would show or if there was any reason to cover it up.

The district court also allowed Trotter to explore his coverup theory in other ways. Although mentioning the security-camera footage was off-limits, he could still question the supervisor about any "conversation[s]" he had with the guards after the incident. Given the "great deference" we owe to the district court's balancing under Rule 403, we cannot say that its approach was an abuse of discretion. *Zierke*, 618 F.3d at 759 (quotation marks omitted); *cf. Davis v. White*, 858 F.3d 1155, 1160 (8th Cir. 2017) (affirming the exclusion, under Rule 403, of evidence that a non-party officer who failed to preserve video footage of a jailhouse altercation might have been biased because, in the court's view, "excessive force, not the retention of potential evidence, was the central trial issue").

### III.

In his final challenge, Trotter turns his attention to the jury instructions. One of the guards decided not to participate in the case, and pretrial discussions focused on what to tell the jury about his decision. The district court opted for the following instruction: "Mr. McFarland is not participating in this trial, and you will not be . . . deciding [his] liability . . . ." Although short, the instruction was accurate, neutral, and told the jury all it needed to know. *See Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 460 (8th Cir. 2013).

Trotter asked for one that would say more. His proposed instruction said that, "for purposes of [the] verdict in this case," the jury "must" take as true that McFarland "struck [him] in the face while [he] was handcuffed; pushed [him] into a metal fence gate; threw [him] against a closed door; spit in [his] face; and threatened that if [he] did not plead guilty to assaulting [the guard in the kitchen], [the guards]

-5-

would 'get' [him]." Trotter makes no effort to hide the fact that his instruction would have used McFarland's nonparticipation as a sword against the three other guards who opted for trial.

"An adverse[-]inference instruction is a powerful tool," *Morris v. Union Pac. R.R.*, 373 F.3d 896, 900 (8th Cir. 2004), and it would be unprecedented, at least in this circuit, to allow one to be used offensively against *other* defendants who have yet to be found at fault. Trotter relies on *McMillian/McMillian, Inc. v. Monticello Insurance*, but the instruction there prevented a party from disputing the "facts alleged in the complaint" against *him*, not those alleged against others. 116 F.3d 319, 321 (8th Cir. 1997). Here, by contrast, the jury would have been told that it had to take those facts as true in evaluating the actions of three *other* parties, all of whom would have been hampered in their own efforts to prove that the assault did not happen. Refusing to give Trotter's proposed instruction, in other words, was not an abuse of discretion because it would have misstated the law, likely misled the jury, and unfairly prejudiced the remaining defendants. *See Morris*, 373 F.3d at 903.

IV.

We accordingly affirm the judgment of the district court.
_____