# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3430
_____

United States of America

*Plaintiff - Appellee*

v.

Jonathan Davis

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: September 26, 2024
Filed: January 14, 2024
_____

Before SMITH, ERICKSON, and STRAS, Circuit Judges.
_____

SMITH, Circuit Judge.

A jury convicted Jonathan Davis for a Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). The district court[1] sentenced Davis to 125

---

[1]The Honorable Henry Edward Autrey, United States District Judge for the Eastern District of Missouri.

months' imprisonment. On appeal, Davis raises the following three issues: (1) whether the district court erred in denying his motion to suppress evidence extracted from his cell phone, (2) whether the court abused its discretion in empaneling an alternate juror member who had been a victim of a similar crime, and (3) whether the district court abused its discretion in excluding defense testimony as irrelevant. We affirm.

## I. *Background*

In January 2021, an unidentified individual wearing a black sweatsuit and a face mask entered a Steak 'n Shake restaurant near closing time and headed straight to the restaurant's back office. This individual then confronted the manager, Richard Payne, and another employee in the office preparing money for bank deposits. The individual held Payne at gun point, demanded the money from the open safe, and subsequently left after taking the money from the safe and the cash registers. Payne identified the robber as a former employee named Jonathan Davis. The security camera footage contained no discernable image of the robber's face due to his mask and hoodie. Nevertheless, Payne was adamant that the robber was Davis, largely based on the black Nike jumpsuit and surgical mask he was wearing. According to Payne, Davis often wore an identical outfit when he worked at the restaurant. The next day Payne identified Davis in a photo lineup and gave officers identifying information about Davis, including a cell phone number belonging to Davis. Davis's information was put in a criminal justice database and classified as "wanted" for questioning about the robbery.

### A. *Motion to Suppress*

On March 2, 2021, Davis was arrested wearing a black Nike jumpsuit. Police seized a red iPhone from his person at the time of his arrest. When asked about the robbery, Davis told officers that he was at a hotel talking with his girlfriend on the phone when the robbery occurred. Investigators applied for a search warrant for the contents of the red iPhone. The affidavit supporting the warrant explained the reasons that Davis was a suspect in the robbery, noted that a phone was found on Davis upon his arrest, recounted Davis's statement that he was on the phone with his

girlfriend at the time of the robbery, and included general statements regarding cell phone data providing incriminating evidence of criminality. The magistrate judge granted the search warrant, and the investigators searched the contents of the red iPhone. The investigation revealed messages, emails, and photographs. These items revealed that Davis had engaged in or contemplated several large financial transactions in the days immediately following the robbery. After Davis's arrest, the government charged him for a Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

Before trial, Davis filed a motion to suppress, contending that the search warrant lacked probable cause. He asserted that the affidavit did not establish a sufficient nexus between the alleged crime and the red iPhone found on Davis at the time of his arrest. In denying the motion, the district court found the warrant to be supported by probable cause and reasoned that even if it was not, the good-faith exception to the warrant requirement would support the admissibility of the evidence.

B. *Motion to Strike Juror No. 40*

During voir dire, Juror No. 40, in response to questioning, disclosed that he had been the victim of an armed robbery at a grocery store in 1976. When the district court asked whether there was anything about that experience that would prevent him from being impartial, he responded, "Possibly. I don't know for sure. It depends on the situation." R. Doc. 121, at 76. After the district court asked whether the facts of the present case would prevent him from giving both sides a fair trial, Juror No. 40 responded, "No, not now. It's been 50 years so I am okay now." *Id*. at 76. The district court followed up again asking whether he might automatically lean to the government's position more, and he responded, "No." *Id.* Defense moved to strike Juror No. 40 for cause, but the motion to strike was overruled, and Juror No. 40 was seated as an alternate. Juror No. 40 later became an active juror when another juror

-3-

reported out sick. Defense objected to Juror No. 40 a second time, but the district court overruled the objection.

### C. *Exclusion of Defense Testimony*

Before trial, the government filed a motion in limine seeking to exclude defense testimony that a friend gifted a vehicle to Davis a month after the robbery. The court granted the requested exclusion, finding the evidence irrelevant. Davis moved for reconsideration, arguing that this evidence was relevant because the government would likely argue that Davis committed the robbery to buy the vehicle with the stolen money. The motion for reconsideration was denied. At trial, Davis objected to the ruling and was once again overruled. After the government completed its evidentiary case, the government asked the court to put on the record the court's final ruling on the testimony's admissibility. The district court issued a final ruling that the acquisition of the car was too remote from the robbery and, therefore, was irrelevant to the case.

## II. *Discussion*

Davis argues that the district court (A) erred in denying the defense's motion to suppress evidence, (B) abused its discretion by denying the defense's motion to strike juror No. 40, and (C) abused its discretion in excluding the defense's testimony. We affirm.

### A. *Motion to Suppress*

Davis alleges that the district court erred in denying his motion to suppress. He contends that the search warrant's supporting affidavit (1) lacked probable cause because it did not establish a "nexus" between the red iPhone seized and any criminal activity and (2) was so lacking in probable cause that the good-faith exception does not apply. We conclude that probable cause supported the affidavit and affirm the district court's denial of the motion to suppress.

We review Fourth Amendment determinations de novo. *United States v. Ralston*, 88 F.4th 776, 778 (8th Cir. 2023). "However, we grant 'great deference' to

the initial determination that there was probable cause for the search." *United States v. Skarda*, 845 F.3d 370, 376 (8th Cir. 2016) (quoting *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009)). Therefore, we will affirm the district court's denial of a motion to suppress "unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." *United States v. Mayweather*, 993 F.3d 1035, 1040 (8th Cir. 2021) (quoting *Skarda*, 845 F.3d at 376).

"A magistrate judge may issue a search warrant 'upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place.'" *Skarda*, 845 F.3d at 376 (quoting *Steagald v. United States*, 451 U.S. 204, 213 (1981)). A showing of probable cause requires "evidence of a nexus between the contraband and the place to be searched." *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). The issuing judge "must make a 'common-sense decision' based on the totality of the circumstances set forth in the affidavit as to whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Skarda*, 845 F.3d at 376 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The requisite nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *United States v. Etheridge*, 165 F.3d 655, 657 (8th Cir. 1999).

If the magistrate judge relies solely upon a supporting affidavit to issue the search warrant, a subsequent review of the warrant's validity may only address "information which is found within the four corners of the affidavit." *Id.* at 656 (quoting *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)). We therefore turn to the affidavit to determine whether it provided a substantial basis for the magistrate judge's finding of probable cause.

The facts and the conclusions set forth in the affidavit in support of the application for the warrant may be summarized as follows:

(1) On January 23, 2021, at approximately 12:20 a.m., the manager of the Steak 'n Shake, Richard Payne, and another employee were in the restaurant's back office preparing bank deposits. An individual entered the restaurant, went straight to the back office, and held a gun to Payne's neck and demanded the money from the safe. During the robbery, the gunman was wearing a black Nike sweatsuit with a light or shiny spot on the back of the pants.

(2) Both Payne and another employee who was at the front of the restaurant identified former employee Jonathan Davis as the individual who entered the restaurant.

(3) After identifying Davis in a photo lineup as the robber, Payne provided investigators with Davis's identifying information, including a phone number that another Steak 'n Shake employee had provided him.

(4) On March 2, 2021, Davis was arrested for an unrelated incident and was wearing a black Nike sweatsuit with a silver button on the back. At the time of his arrest, Davis possessed a red iPhone.

(5) During Davis's interview, he claimed that he was not at the robbery because he was at a hotel talking on the phone with his girlfriend at that time.

(6) Based on the officer's training and experience, he believed that individuals engaged in criminal activities will typically use phones to communicate with co-conspirators, access mapping and location services to plan and facilitate crimes, access contact lists of associates, take pictures and videos of the contraband, or otherwise message and search the internet for topics related to their illicit endeavors.

The magistrate judge, relying on the above-listed facts, found the warrant application to be sufficiently supported by probable cause.

On appeal, Davis argues that no nexus existed between the robbery and the seized phone because (1) the affidavit did not establish that the alleged robber used a cell phone during the robbery and (2) the affidavit did not establish that the red iPhone seized by law enforcement was the phone he had during the timeframe of the robbery. These arguments fail.

Davis alleges that the evidence did not connect the searched phone, and the crime alleged. Davis noted that no evidence showed that a phone was used during the robbery. But, when questioned about the robbery, Davis admitted to contemporaneous use of a cell phone as the robbery occurred. Davis told investigators that at the time of the robbery he was at a hotel speaking on the phone with his girlfriend. Based on the totality of the circumstances, the district court had substantial evidence to conclude that there was a fair probability that evidence proving or disproving Davis's alibi could be found by searching his phone's contents, and the phone found on his person was likely the phone that he possessed just one month earlier during the robbery.

Davis also argues that even if the affidavit sufficiently connected the crime to his phone to justify the search of his phone, investigators had no reason to believe that the red iPhone was the phone containing incriminating information. Davis analogizes this scenario to a decision from the D.C. Circuit. *See United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017). That case held that the affidavit lacked a sufficient nexus between the crime and the item to be searched. *Id*. at 1270–71. In *Griffith*, the warrant authorized officers to search for and seize all cell phones and other electronic devices in the defendant's residence as part of an investigation for a homicide that had occurred more than one year prior. *Id*. at 1269–70. The defendant challenged the affidavit's boilerplate language as being insufficient to show that he had even owned a cell phone or that any device would be found in the residence. *Id*. at 1270.

*Griffith* is distinguishable. First, the warrant involved searching a home for any electronic devices, and therefore "involve[d] the prospect of an especially

invasive search of an especially protected place." *Id*. at 1272. Second, the affidavit in *Griffith* lacked any information about "observation of Griffith's [sic] using a cell phone, no information about anyone having received a cell phone call or text message from him, no record of officers recovering any cell phone in his possession at the time of his previous arrest." *Id*. The case recognized that the "typical case" is when "officers . . . have already come into possession of a suspect's phone after seizing it on his person incident to his arrest." *Id*. at 1273. Finally, the suspected crime occurred a year prior to the warrant being issued. *Id.* at 1269. The court found that "police often might fairly infer that a suspect's phone contains evidence of recent criminal activity," but this inference was weak in *Griffith* because "more than a year had elapsed since the shooting." *Id.* at 1274. In fact, the court said "[t]hat assessment might have added force if officers had been investigating a more recent crime." *Id.* Accordingly, the court found that the lack of probable cause rendered the warrant invalid under the Fourth Amendment. *Id*. at 1271.

Here, unlike in *Griffith*, sufficient evidence supports the officer's reasonable inferences surrounding the red iPhone. When investigating the robbery, a Steak 'n Shake employee gave Davis's phone number to officers, indicating he had a phone. Davis had a cell phone in his possession when he was arrested. Most importantly, Davis told the authorities that he was at a hotel talking on the phone with his girlfriend at the time of the robbery.

As noted by this court, the probable cause standard is a common-sense standard allowing reasonable inferences. *United States v. James*, 3 F.4th 1102, 1105 (8th Cir. 2021). Davis asks this court to require proof that the red iPhone was the exact phone that he possessed during the robbery. This court's common-sense standard, however, would allow a reasonable inference that the phone found on Davis one month after the robbery was likely the phone that he possessed during the time of the robbery. Moreover, Davis's statement to law enforcement about being on the phone at the time of the robbery created a fair probability that law enforcement would find relevant evidence by searching the phone's call data. On this record, the district court properly determined that there was a sufficient nexus between the target

of the search and the crime. Therefore, the district court had substantial evidence to conclude that the warrant was supported by probable cause.

Because we conclude that the search warrant was supported by probable cause, we need not address Davis's argument that the affidavit would not receive the benefit of the good-faith exception to the exclusionary rule. The district court's denial of the motion to suppress is affirmed.

## B. *Motion to Strike Juror No. 40*

Davis argues that the district court abused its discretion by not excluding Juror No. 40 because the juror experienced a similar crime nearly 50 years prior. Davis contends that the prior experience caused the juror to be prejudiced against him due to implied bias. We disagree.

"The district court is given broad discretion in determining whether to strike jurors for cause because it is in the best position to assess the demeanor and credibility of the prospective jurors." *Allen v. Brown Clinic, P.L.L.P.*, 531 F.3d 568, 572 (8th Cir. 2008) (quoting *United States v. Elliott*, 89 F.3d 1360, 1365 (8th Cir. 1996)). Consequently, "absent abuse of discretion, we will not interfere with the District Court's determination of juror qualifications." *Id.* (cleaned up).

Historically, our circuit repeatedly rejected a per se implied bias theory in the context of recycled jurors who had previously heard government witnesses testify in other cases. *See, e.g.*, *Johnson v. United States.*, 484 F.2d 309, 310 (8th Cir. 1973) (per curiam) (refusing to find implied bias when jurors had heard government witnesses testify in previous trials); *United States v. Williams*, 484 F.2d 176, 178 (8th Cir. 1973) (per curiam) (same); *United States v. Jones*, 486 F.2d 476, 477–78 (8th Cir. 1973) (per curiam) (same); *United States v. Graham*, 739 F.2d 351, 352 (8th Cir. 1984) (per curiam) (refusing to find implied bias where several jurors had sat on a jury involving the same attorney and defendant). These consistent rejections led our court to characterize our precedent as having "rejected the per se theory of implied bias in favor of a requirement that actual prejudice be demonstrated." *United*

*States v. Kelton*, 518 F.2d 531, 533 (8th Cir. 1975) (per curiam) (internal quotation marks omitted).

The implied bias theory, however, resurfaced before the Supreme Court in *Smith v. Phillips*, 455 U.S. 209 (1982). In *Phillips*, the majority opinion focused on a post-conviction hearing as a proper remedy for when a juror's bias is questioned. *Id.* at 216–18. Justice O'Connor's concurrence favored retaining implied bias as a remedy for certain "extreme situations that would justify a finding of implied bias." *Id.* at 222 (O'Connor, J., concurring). She went on to explain that the "the use of the conclusive presumption of implied bias" has never been precluded by Supreme Court precedent. *Id.* at 223 (O'Connor, J. concurring). Accordingly, she called for the Court to "retain the doctrine of implied bias to preserve Sixth Amendment rights" because there "may be circumstances in which a postconviction hearing will not be adequate to remedy a charge of juror bias." *Id.* at 224 (O'Connor, J. concurring). Justice O'Connor gave the following examples of such circumstances:

> [A] revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.

*Id.* at 222 (O'Connor, J., concurring).

Since *Phillips*, we have permitted implied bias arguments, though none have succeeded. *See Johnson v. Armontrout*, 961 F.2d 748, 756 (8th Cir. 1992) *Fuller v. Bowersox*, 202 F.3d 1053, 1056 (8th Cir. 2000); *United States v. Tucker*, 243 F.3d 499, 509 (8th Cir. 2001) ("[T]he idea of presumed bias is reserved for extreme cases, such as when a juror is a close relative of a party or victim in the case."). In each of the cases, we have found that the defendant's claim of implied bias fell below the "extreme situations" contemplated in *Phillips*. *See Sanders v. Norris*, 529 F.3d 787, 792–93 (8th Cir. 2008) (finding that a juror who was a mortician and prepared one of the victim's bodies for the funeral was not an extreme situation warranting a finding of implied bias); *Manuel v. MDOW Ins. Co.*, 791 F.3d 838, 843–44 (8th Cir.

-10-

2015) (finding that a distant relative on the jury without more evidence of partiality was not an extreme situation warranting a finding of implied bias); *United States v. Needham*, 852 F.3d 830, 840 (8th Cir. 2017) (finding that a distant past acquaintance with an attorney's relative does not qualify as an extreme situation warranting a finding of implied bias). However, we have not decided a case involving a challenged juror who was a victim of crime so closely resembling the charged offense.

Here, Juror No. 40 was not an actual employee of the prosecuting agency, was not a close relative to any parties in the trial or the criminal event, and was not a witness or otherwise involved in the robbery. *See Phillips*, 455 U.S. at 224 (O'Connor, J., concurring). Nevertheless, Davis points out that this case does involve a juror who experienced, admittedly long ago, a traumatic experience as a crime victim. He asserts Juror No. 40's experience qualifies as an "extreme situation[]" that would create a presumption of implied bias. *Phillips*, 455 U.S. at 222 (O'Connor, J., concurring). Davis points to examples outside the Eighth Circuit in which our sister circuits have found implied bias involving people intimately familiar with the offense charged in the trial. *See United States v. Gonzalez*, 214 F.3d 1109, 1113–14 (9th Cir. 2000) (finding that a woman who was previously married to a cocaine user and dealer, but recently divorced due to ex-spouse's drug problems and never affirmatively agreed to be impartial was impliedly biased in a trial involving drug charges); *Hunley v. Godinez*, 975 F.2d 316, 320 (7th Cir. 1992) (per curiam) (finding that jurors who had been robbed during an ongoing trial for burglary were impliedly biased); *Burton v. Johnson*, 948 F.2d 1150, 1159 (10th Cir. 1991) (finding that juror who was currently experiencing a domestic abuse situation over a long period of time and was dishonest about her experience was impliedly biased in murder trial involving abuse); *Dyer v. Calderon*, 151 F.3d 970, 982–84 (9th Cir. 1998) (finding that juror whose brother was murdered in a similar manner as the victim in the case and repeatedly lied about it to preserve her status as juror was impliedly biased).

We are not persuaded by these cases to chart a different course for our circuit's handling of cases raising implied bias. Here, Juror No. 40 told the court that he had been the victim of an armed robbery in 1976. He recounted that he was an employee at a grocery store in Missouri, and an individual entered the store at closing. The individual held a gun to Juror No. 40's neck and forced him to take him to the store's safe. Once the individual obtained all the money, he left the store and was never caught. There are similarities between Juror No. 40's experience and the instant offense. It involved an armed robbery at a store during closing, with Juror No. 40 being threatened during the incident. In addition, we acknowledge that experiencing a crime is often a traumatic experience not easily forgotten. However, the question before us is meaningfully narrower than merely whether a crime victim can be impliedly biased. Rather, the question is whether an empaneled juror who was a victim in a similar crime nearly 50 years ago is an "extreme situation[] where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." *Sanders*, 529 F.3d at 792 (quoting *Person v. Miller*, 854 F.2d 656, 664 (4th Cir. 1988)).

We conclude that this case does not constitute an "extreme situation" warranting a finding of implied bias, and the district court did not abuse its discretion in empaneling Juror No. 40 over defendant's objection.

C. *Motion to Exclude Defense Testimony*

Davis argues that the district court abused its discretion when it excluded testimony regarding a car he acquired by gift after the robbery. We affirm the district court's ruling.

We review exclusion of evidence for abuse of discretion, and "evidentiary rulings are reversed only for 'a clear and prejudicial abuse of discretion.'" *Davis v. White*, 858 F.3d 1155, 1159 (8th Cir. 2017) (quoting *Quigley v. Winter*, 598 F.3d 938, 946 (8th Cir. 2010)). We give substantial deference to the district court's

-12-

decision if the exercise of discretion "does not unfairly prevent a party from proving its case." *United States v. Condon*, 720 F.3d 748, 754 (8th Cir. 2013) (cleaned up).

Davis argues that the district court deprived him of his constitutional right to present his defense. Davis cites Eleventh Circuit precedent discussing a defendant's right to introduce evidence to dispel or counter the government's narrative, even if the evidence does not directly bear on a particular element of the offense. *See United States v. Hurn*, 368 F.3d 1359, 1366–67 (11th Cir. 2004). A defendant certainly has the right to present his defense, but the evidence offered to establish that defense must be admissible. *See United States v. Wilkens*, 742 F.3d 354, 364 (8th Cir. 2014). A district court may exclude "defense evidence on grounds the evidence is 'repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues.'" *Id.* (quoting *Holmes v. South Carolina*, 547 U.S. 319, 326–27 (2006)). Even a defendant's right to dispel or counter the government's narrative is not unlimited and only pertinent when it "might color a jury's assessment of the material facts of the case." *Hurn*, 368 F.3d at 1367.

Davis sought to introduce evidence that he was gifted a car by a friend one month after the robbery. He contended that the evidence was not only relevant but important evidence to counter the government's narrative. According to Davis, the government's evidence insinuated that Davis may have committed the robbery to get a car. The government suggested that Davis, flush with stolen funds, began searching for a car immediately after the robbery. Davis sought to counter this narrative with the evidence that he was gifted a car a month later. Davis's argument falls far short of showing that the district court abused its discretion.

First, Davis argues that this evidence could have countered the government's theory that Davis committed the robbery because he needed a car. Indeed, a court may abuse its discretion when it excludes evidence material to issues of intent or motive. *See United States v. Heathershaw*, 81 F.3d 765, 768 (8th Cir. 1996) (holding that exclusion of defendant's evidence about a claim of right to the land was an abuse of discretion because the evidence was material to the issue of defendant's intent to

steal). However, Davis sought to introduce evidence of receiving a car by gift a month *after* the robbery. This evidence was not relevant to his motives prior to the Steak 'n Shake robbery. The proposed evidence did not show that Davis knew he was going to be gifted a vehicle before the robbery. Therefore, the evidence that he was gifted a car one month after the robbery was not material to issues of intent or motive.

Additionally, Davis argues that the evidence would have allowed him to counter the government's narrative that he started searching for a car after getting cash from the robbery. Davis, however, did submit evidence to counter this narrative. Davis testified that he worked other jobs to get money and was not "broke" before the robbery as the government claimed. R. Doc. 120, at 126. The record reveals that the defendant "was able to present to the jury all the evidence supporting his claim[]." *United States v. Parish*, 606 F.3d 480, 486 (8th Cir. 2010). The evidence that he was gifted a car a month later is minimally relevant if relevant at all.

Therefore, the district court did not abuse its discretion in excluding the defense's testimony because the evidence was not material to intent or motive, the evidence was too remote to be relevant, and Davis was otherwise given the opportunity to counter the government's evidence and narrative.

### III. *Conclusion*
Accordingly, we affirm the judgment of the district court.

_____